UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SONG FI, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-1283 (RMC) |
| | ) | |
| GOOGLE INC. and YOUTUBE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

Plaintiffs Song fi, Inc., Rasta Rock, Inc., Joseph N. Brotherton, and N.G.B., a six-year-old minor and son of Plaintiff Brotherton, have filed suit against Defendant YouTube, LLC, and its parent company, Google Inc., alleging that they improperly removed Plaintiffs' video from the YouTube website. Plaintiffs have also filed for a preliminary injunction to compel the reinstatement of their video on YouTube. Defendants argue that the case should be litigated in Santa Clara County, California, pursuant to the forum selection clause expressly set forth in YouTube's Terms of Service. Defendants have also moved to dismiss the Amended Complaint. The Court will transfer this case to the U.S. District Court for the Northern District of California, where Santa Clara County is located. Both Plaintiffs' motion for a preliminary injunction and Defendants' motion to dismiss will be denied without prejudice.

## I.  BACKGROUND[1]

Defendant YouTube, LLC is wholly owned by Defendant Google, Inc. and operates as a division of Google.[2]  YouTube's website offers an online video service through which users can share and watch videos.  For the most part, the website does not charge for uploading or viewing videos.  In order to upload a video to the YouTube website, an individual or group must create a user account with YouTube.  In the process of creating such an account, users are presented with a link to the YouTube Terms of Service Agreement.  The account will not be activated unless the user checks a box stating "I agree to the Terms of Use and Privacy Policy."

The Terms of Service contain the following provisions:

> By using or visiting the YouTube website or any YouTube products, software, data feeds, and services provided to you on, from, or through the YouTube website (collectively the "Service") you signify your agreement to (1) these terms and conditions (the "Terms of Service"), (2) Google's Privacy Policy, found at http://www.youtube.com/t/privacy and incorporated herein by reference, and (3) YouTube's Community Guidelines, found at http://www.youtube.com/t/community_guidelines and also incorporated herein by reference. If you do not agree to any of these terms, the Google Privacy Policy, or the Community Guidelines, please do not use the Service. . . .
>
> You agree that: (i) the Service shall be deemed solely based in California; and (ii) the Service shall be deemed a passive website that does not give rise to personal jurisdiction over YouTube, either specific or general, in jurisdictions other than California. These Terms of Service shall be governed by the internal substantive laws of the State of California, without respect to its conflict of laws principles. Any claim or dispute between you and YouTube that arises in whole or in part from the Service shall be decided exclusively by a court of competent jurisdiction located in Santa

---

[1] Because this Opinion does not address the merits of Plaintiffs' claims, only facts relevant to the question of venue are set forth herein.

[2] All of Plaintiffs' claims relate to actions taken by YouTube and thus, for purposes of clarity, this Order will refer solely to YouTube.

> Clara County, California. These Terms of Service, together with the Privacy Notice at http://www.youtube.com/t/privacy and any other legal notices published by YouTube on the Service, shall constitute the entire agreement between you and YouTube concerning the Service. If any provision of these Terms of Service is deemed invalid by a court of competent jurisdiction, the invalidity of such provision shall not affect the validity of the remaining provisions of these Terms of Service, which shall remain in full force and effect. No waiver of any term of this these Terms of Service shall be deemed a further or continuing waiver of such term or any other term, and YouTube's failure to assert any right or provision under these Terms of Service shall not constitute a waiver of such right or provision. YouTube reserves the right to amend these Terms of Service at any time and without notice, and it is your responsibility to review these Terms of Service for any changes. Your use of the Service following any amendment of these Terms of Service will signify your assent to and acceptance of its revised terms. YOU AND YOUTUBE AGREE THAT ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICES MUST COMMENCE WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES. OTHERWISE, SUCH CAUSE OF ACTION IS PERMANENTLY BARRED.

YouTube Terms of Service (TOS) ¶¶ 1.A, 14, dated June 9, 2010, *available at* https://www.youtube.com/static?template=terms (last visited Oct. 28, 2014); *see also* Dkt. 8-4.

Plaintiff Song fi is a corporation with its principal place of business located in Washington D.C. that owns and distributes works of music and videos by independent musicians and filmmakers. On February 14, 2014, Song fi uploaded a video called "LuvYa LuvYa LuvYa" (hereinafter, LuvYa) onto YouTube's website. The video featured the musical group Rasta Rock Opera, as well as the performer Joseph Brotherton and his six-year-old son, N.G.B. Am. Compl. ¶¶ 3, 4, 31. On April 18, 2014, YouTube removed the video from its website and replaced it with a message reading: "This Video Has Been Removed Because its Content Violated YouTube's Terms of Service." *Id*. ¶ 34.

Song fi protested the removal and was then informed by YouTube that the video had been removed because of YouTube's belief that Song fi or its agents had attempted to

manipulate the video's view count in violation of YouTube's terms of service. The "view count" is a feature on the YouTube website whereby, directly next to or below each item of uploaded content, there is a display of the number of times that the content has been viewed by the public. YouTube prohibits uploaders from using any kind of electronic devices (known as "robots" or "spiders") to artificially inflate the view count. These mechanisms are detected when a view count number increases at a rate exceeding that which could result from humans viewing the content on a web browser. Song fi disputed any artificial manipulation of the view count for the LuvYa video, and appealed YouTube's removal decision. However, YouTube refused to reinstate the video to its initial location.[3]

On July 28, 2014, Song fi filed a Complaint [Dkt. 1] against Google and YouTube alleging breach of contract, libel, and tortious interference with business relationships. Song fi simultaneously filed a motion for a temporary restraining order (TRO) [Dkt. 2] and a preliminary injunction [Dkt. 3] to have the video restored to its exact former location on the YouTube website. Google and YouTube opposed the motion. In their opposition [Dkt. 8], they argued that the motion should have been brought in Santa Clara County, California, under the plain terms of YouTube's Terms of Service Agreement. On August 1, 2014, the Court held a hearing to address Song fi's motions for injunctive relief. The Court construed the argument raised in Defendants' opposition as a motion to transfer the case.[4] The Court then granted leave for the

---

[3] After removing the video, YouTube re-uploaded the video to a new location. However, the re-uploaded video was posted under a different link that did not reinstate the view count (over 23,000 views), likes, and comments associated with the original video. Song fi seeks to reinstate the video at its initial link and to reinstate the former view count, likes, and comments.

[4] Google and YouTube argued that the forum selection clause in the Terms of Service is enforceable and that "[t]he Court should deny Plaintiff's motion pending resolution of Defendants' forthcoming motion to transfer." Def. Opp. [Dkt. 8] at 11. *See also* Def. Reply in Support of Transfer [Dkt. 15] at 1 ("Defendants again respectfully request that this Court enforce

4

parties to brief the question of venue and reserved decision on Song fi's motion for a preliminary injunction, while denying its request for a TRO. Sept. 9, 2014 Minute Order.

On August 15, 2014, Song fi filed a memorandum on the question of venue [Dkt. 14], as well as an Amended Complaint [Dkt. 13] adding three new plaintiffs: Rasta Rock, Inc., Joseph Brotherton, and Mr. Brotherton's six-year old son, N.G.B. Rasta Rock is a music and film group and Mr. Brotherton is the president of Song fi, as well as an actor and performer; both, along with Mr. Brotherton's son, were featured in the LuvYa video. The Amended Complaint similarly includes claims of breach of contract, libel, and tortious interference; it newly alleges violations of the D.C. Consumer Protection Procedures Act (CPPA).[5] Defendants filed a reply in support of their request to transfer, [Dkt. 17], and a motion to dismiss the amended complaint, [Dkt. 18].

## II. LEGAL STANDARD – VENUE

28 U.S.C. § 1391 governs venue in federal district courts, providing in relevant part that:

> A civil action may be brought in – (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

---

the forum selection clause . . . and transfer this action to the U.S. District Court for the Northern District of California.").

[5] The CPPA makes unlawful various trade practices including "misrepresent[ation] as to a material fact which has a tendency to mislead," "fail[ure] to state a material fact if such failure tends to mislead," usage of "innuendo or ambiguity as to a material fact, which has a tendency to mislead," and disparagement of "the goods, services, or business of another by false or misleading representations of material facts." D.C. Code § 28-3904(e), (f), (f-1), and (g). Plaintiffs allege that YouTube's conduct violates these provisions by misleading consumers about the content of the LuvYa video.

5

28 U.S.C. § 1391(b).

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may, at the lawsuit's outset, test whether the plaintiff "has brought the case in a venue that the law deems appropriate." *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C. 2006). "If the plaintiff's chosen forum is an improper venue under applicable statutes, or is otherwise inconvenient, the Court may dismiss the action or transfer the case to a district where venue would be proper or more convenient." *Id.* (citing 28 U.S.C. § 1406 (providing for dismissal or transfer when venue is defective) and 28 U.S.C. § 1404 (allowing transfer "for the convenience of the parties and witnesses")). "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003).

"[W]hen parties have agreed to a forum selection clause, the traditional analysis is altered and . . . the clause should control absent a strong showing it should be set aside." *Gipson v. Wells Fargo & Co.*, 563 F. Supp. 2d 149, 154 (D.D.C. 2008) (quoting *2215 Fifth St. Assoc. v. U–Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 58 (D.D.C. 2001) (internal quotations omitted)); *see also M/S Bremen v. Zapata Off–Shore Co.* (*The Bremen*), 407 U.S. 1, 10, 12 (1972) (holding that "[forum-selection] clauses are prima facie valid" and "should be honored by the parties and enforced by the courts"). Forum selection clauses are enforced unless the opposing party shows that one of the exceptions identified in *The Bremen* applies. The opponent must make a "strong showing" that (1) "enforcement would be unreasonable and unjust"; (2) "the clause was invalid for such reasons as fraud or overreaching"; (3) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision"; or (4) "trial in the contractual forum would be so gravely difficult and inconvenient that [the

plaintiff] will for all practical purposes be deprived of his day in court." *Cheney v. IPD Analytics, LLC*, 583 F. Supp. 2d 108, 118 (D.D.C. 2008) (quoting *The Bremen*, 407 U.S. at 15) (internal quotations omitted)).  The "presumption in favor of forum selection clauses" includes clauses in "non-negotiated boilerplate contracts."  *Gipson*, 563 F. Supp. 2d at 154 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).

### III.  ANALYSIS

#### A.  The Forum Selection Clause is Enforceable

The parties dispute the enforceability of the forum selection clause in YouTube's Terms of Service, which provides that "[a]ny claim or dispute between you and YouTube that arises in whole or in part from the Service shall be decided exclusively by a court of competent jurisdiction located in Santa Clara County, California."  TOS ¶ 14.   Plaintiffs make three arguments as to why this provision should not dictate venue.  First, they argue that it does not apply to Plaintiffs Rasta Rock, Joseph Brotherton, and N.G.B., because they did not upload the video onto YouTube's website nor agree to the Terms of Service.  Second, they maintain that the venue provision became invalid when YouTube ceased to be a "passive" website.  Third, they assert that the Terms of Service are unconscionable. Plaintiffs' arguments fail.

#### 1.  Plaintiffs are Closely Related and Bound By YouTube's Terms of Service

It is immaterial that Plaintiffs Rasta Rock, Brotherton, and N.G.B. did not personally upload the LuvYa video to the YouTube website because they are closely related to Song fi, which agreed to the Terms of Service.  *Sabre Int'l Sec. v. Torres Advanced Enter. Solutions, LLC* held that non-parties and non-signatories to an agreement may be bound by that agreement's forum selection clause if their conduct is "closely related to the contractual relationship" so that is "foreseeable that they would be bound by such clause."  No. 11-806

7

(GK), 2014 U.S. Dist. LEXIS 81349, at *27-28 (D.D.C. June 16, 2014) ("[W]here the alleged conduct of the nonparties is closely related to the contractual relationship, 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.'" (citing *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) and *Lipcon v. Underwriters at Lloyd's London*, 148 F.3d 1285, 1299 (11th Cir. 1998)); *see also Kotan v. Pizza Outlet, Inc.*, 400 F. Supp. 2d 44, 48-49 (D.D.C. 2005) (rejecting corporation's argument that it should not be bound by forum selection clause in agreement to which it was not a party because corporation was established by plaintiff, who signed contract, and corporation's claims flowed out of plaintiff's interactions with defendants).

In this case, all Plaintiffs are closely related. Rasta Rock and Song fi share an office (Am. Compl. ¶¶ 1-2) and have the same registered agent. *See* Business Filings for RastaRock Corporation and Song fi Inc., The District of Columbia Business Filings Search, *available at* https://corp.dcra.dc.gov/Home.aspx (last visited October 24, 2014).[6] All music created by the Rasta Rock Opera is owned and managed by Song fi. Decl. of Joseph Brotherton [Dkt. 2-1] ¶ 3. Joseph Brotherton is the President of Song fi and his son, N.G.B., starred in the LuvYa video along with Rasta Rock. *Id.* ¶¶ 2, 4. The argument of Plaintiffs Rasta Rock, Brotherton, and N.G.B. that their libel and tortious interference claims are separate from Song fi's breach of contract claim carries no weight; all of the injuries complained of in this case stem from the fact that YouTube removed the LuvYa video and replaced it with an allegedly defamatory message—a message explicitly stating that the video had been removed *because its content violated the Terms of Service*. Thus, all claims here are closely related to the contract at

---

[6] The Court may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of information available on government website).

issue and, for the purposes of the forum selection clause, Rasta Rock, Joseph Brotherton, and N.G.B. are not distinguishable from Song fi. Allowing Plaintiffs to proceed in this District, when their claims all relate to conduct based on YouTube's Terms of Service, would undermine the very purpose of forum selection clauses. *See Kotan*, 400 F. Supp. 2d at 49 ("Were this Court to rule that the forum selection clause does not apply to [the corporation], a plaintiff in a civil action could simply join a newly-formed corporation to its complaint to defeat an otherwise valid forum selection clause."); *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 441 (7th Cir. 2012) ("Were it not for judicial willingness in appropriate circumstances to enforce forum selection clauses against affiliates of signatories, such clauses often could easily be evaded.").

### 2. YouTube's Actions Did Not Invalidate the Forum Selection Clause

Despite Plaintiffs' claims to the contrary, the venue provision is not invalidated because YouTube "actively communicated with its viewers about LuvYa" when it replaced the video with a take-down message. Pl. Mem. on the Question of Venue [Dkt. 14] at 6-7. Citing no law for their position, Plaintiffs argue that YouTube's actions in this respect somehow nullify the venue and choice of law provisions because of the following clause in the Terms of Service: "the Service shall be deemed a passive website that does not give rise to personal jurisdiction over YouTube, either specific or general, in jurisdictions other than California." TOS ¶ 14. Plaintiffs are incorrect. This clause is clearly designed to preempt assertions of jurisdiction based on contacts with a specific forum. *See Sweetgreen, Inc. v. Sweet Leaf, Inc.*, 882 F. Supp. 2d 1, 5 (D.D.C. 2012) (finding that even though a company's Facebook and Twitter pages were interactive, these "passive websites alone do not provide a basis for jurisdiction"). There is simply no authority for the proposition that because YouTube took down a video pursuant to its

Terms of Service, posted a message in its place, and re-uploaded the video to another location, it waived its rights to enforce the venue selection clause.

### 3. Neither the Terms of Service Nor the Forum Selection Clause is Unconscionable

As noted above, the forum selection clause is prima facie valid. Plaintiffs make no claims that any of the *Bremen* exceptions apply.[7] Instead, Plaintiffs argue that the clause should not be enforced because the contract as a whole is unconscionable.

Evaluating Plaintiffs' unconscionability argument involves a determination of the applicable law. A federal court is directed to apply the choice of law rules for the forum in which it sits. *See A.I. Trade Finance, Inc. v. Petra International Banking Corp.*, 62 F.3d 1454, 1463-64 (D.C. Cir. 1995). The District of Columbia choice of law doctrine generally holds "'that parties to a contract may specify the law they wish to govern, as part of their freedom to contract, as long as there is some reasonable relationship with the state specified.'" *Aneke v. Am. Express Travel Related Servs.*, 841 F. Supp. 2d 368, 375 (D.D.C. 2012) (quoting *Ekstrom v. Value Health, Inc.*, 68 F.3d 1391, 1394 (D.C. Cir. 1995)). However, it would be premature to apply the choice of law provision in the Terms of Service, which requires application of California law, given Plaintiffs' argument that it is unenforceable; accordingly, "the Court must first determine the applicable law without regard to the choice-of-law provision." *Signature Tech. Solutions v. Incapsulate, LLC*, No. 13-0661 (RBW), 2014 U.S. Dist. LEXIS 97080, at *16-17 (D.D.C. July 17, 2014).

---

[7] Even considering the *Bremen* factors, the Court finds that none should prevent the enforcement of the forum selection clause. To the extent Plaintiffs argue that litigation in California would be inconvenient, it is not so difficult that it will effectively deprive Plaintiffs of their day in court, as discussed further *infra*.

"Under District of Columbia choice-of-law principles, [t]he absence of a true conflict compels the application of District of Columbia law by default." *Id.* at *17 (quotation omitted). Here, California and District of Columbia law on the issue of unconscionability do not conflict. Under California law "[a] finding of unconscionability requires 'a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.'" *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) (quoting *Armendariz v. Foundation Health Psychcare Servs.*, 24 Cal. 4th 83, 114 (2000)). Similarly, "[u]nder D.C. law, a court can void a contract on the grounds that it is unconscionable if the party seeking to avoid the contract proves that the contract was both procedurally and substantively unconscionable." *Fox v. Computer World Servs. Corp.*, 920 F. Supp. 2d 90, 97 (D.D.C. 2013). Thus, the Court will apply the law of the District of Columbia.

Whether or not an agreement "is procedurally unconscionable turns on whether a party 'lacked meaningful choice as to whether to enter the agreement.'" *White v. Four Seasons Hotels & Resorts*, 999 F. Supp. 2d 250, 257 (D.D.C. 2013) (quoting *Fox v. Computer World Services Corp.*, 920 F. Supp. 2d 90, 97 (D.D.C. 2013) (applying D.C. law)). This is determined under the totality of the circumstances; "the court must ask whether 'each party to the contract, considering his obvious education or lack of it, ha[d] a reasonable opportunity to understand the terms of the contract, or [whether] the important terms [were] hidden in a maze of fine print and minimized by deceptive [] practices.'" *Fox*, 920 F. Supp. 2d at 98 (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)) (alterations in original). "A contract is substantively unconscionable if the contract terms are unreasonably favorable to one party" such that they are "so outrageously unfair as to shock the judicial conscience." *Id.* at 99 (internal quotation marks and citation omitted).

11

Plaintiffs argue that YouTube has "overwhelming power in its chosen market" and that Song fi, as a "small, independent music compan[y]," had no choice but to accept the Terms of Service. Pl. Mem. at 9. Though YouTube is undoubtedly a popular video-sharing website, it is not the case that Plaintiffs lacked any kind of meaningful choice as to whether to upload their video to the YouTube website and agree to the conditions set forth by YouTube. Plaintiffs could have publicized the LuvYa video by putting it on various other file-sharing websites or on an independent website. Moreover, the fact that Plaintiffs lacked bargaining power does not render the entire contract or the forum selection clause procedurally unconscionable. *Fox*, 920 F. Supp. 2d at 98 (finding plaintiff had "meaningful choice" about whether to sign agreement even though it was presented as condition of employment without further negotiation); *2215 Fifth St. Assocs.*, 148 F. Supp. 2d at 56 (finding forum selection clause enforceable despite "the relative disparity in the bargaining positions of the parties throughout the negotiation process" because "the presumption in favor of enforcing a forum selection clause applies even if the clause was not the product of negotiation'") (quoting *Marra v. Papandreou*, 59 F. Supp. 2d 65, 70 (D.D.C. 1999)). Nor are standardized boilerplate contracts per se unconscionable. *See Forrest v. Verizon Communs., Inc.*, 805 A.2d 1007, 1010-11, 1013 n.15 (D.C. 2002) (finding no unconscionability in agreement accepted by clicking online button and holding that "[a] contract is no less a contract simply because it is entered into via a computer"); *see also* Restatement (Second) of Contracts § 208 ("It is to be emphasized that a contract of adhesion is not unconscionable per se, and that all unconscionable contracts are not contracts of adhesion."). Here, there was no procedural unconscionability where the conditions for use of YouTube's service were not obscured or hidden, Plaintiffs had a clear opportunity to understand the terms, and they did not lack a meaningful choice. *See Curtis v. Gordon*, 980 A.2d 1238,

1244 (D.C. 2009) (finding party that signed contract did not lack meaningful choice, despite being unrepresented and claiming he did not read or understand agreement).

Plaintiffs' argument that the Terms of Service are substantively unconscionable also falls short. Plaintiffs point to several aspects of the contract, including that: YouTube may modify the Terms, discontinue service, or remove content unilaterally; it includes a warranty disclaimer, liability limitations, and an indemnification clause; and it includes a forum selection clause requiring litigation in Santa Clara, California. None of these terms, nor the contract as a whole, is "so outrageously unfair as to shock the judicial conscience." *Fox*, 920 F. Supp. 2d at 99. Indeed, courts routinely enforce such terms in form contracts. *See Forrest*, 805 A.2d at 1013 n.15, 1114 (rejecting unconscionability argument and noting numerous disclaimers in Verizon's standardized agreement).[8] Unless there is some evidence of "egregious" tactics, of which there is none here, "the party seeking to avoid the contract will have to show that the terms are so extreme as to appear unconscionable according to the mores and business practices of the time and place." *Urban Invest., Inc. v. Branham*, 464 A.2d 93, 100 (D.C. 1983). Plaintiffs have not made such a showing.

With respect to the forum selection clause, it is not improper for YouTube to require that claims against it be brought in the non-arbitrary forum where it resides. *See Pan Am Flight 73 Liaison Group v. Dave*, 711 F. Supp. 2d 13, 24 (D.D.C. 2010) ("[T]he fact that the [agreement] may require parties from all over the world to travel to the District fails to demonstrate that enforcement of the [ ] forum selection clause will create the kind of grave

---

[8] Courts analyzing California law, which applies the same procedural and substantive unconscionability test, have reached the same result. *See Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491-92 (7th Cir. 2004) (noting that "California routinely enforces limited warranties and other terms found in form contracts" and "arbitration provisions in these contracts must be enforced unless states would refuse to enforce all off-the-shelf package deals" because "[s]tandard-form agreements are a fact of life") (citing cases).

inconvenience needed to abrogate a contractual agreement.") (applying D.C. law); *National Dev. Corp. v. Fenetres MQ,* 1998 U.S. Dist. LEXIS 9768, at *6-7 (D.D.C. June 26, 1998) (noting that "[i]t is neither unconscionable, nor uncommon for a contracting party to bargain for the 'home field' as the sole forum for contractual disputes, even when such designation may put the other party at a geographical disadvantage in litigating such a dispute" and upholding forum selection clause requiring litigation in Montreal, Canada, which was not "some arbitrary location chosen to restrict the parties' access to litigation, but is the jurisdiction where the contracting defendant is located") (citing *Commerce Consultants International, Inc. v. Vetrerie Riunite S.p.A.*, 867 F.2d 697, 699-700 (D.C. Cir. 1989)). Furthermore, Google and YouTube's choice of forum has been found consistently enforceable. *See Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 246-48 (E.D. Pa. 2007) (Google's forum selection clause was not result of fraud, overreaching, or bad faith, and was better suited for resolution in California court despite inconvenience to plaintiff);[9] *Person v. Google Inc.*, 456 F. Supp. 2d 488, 493-95 (S.D.N.Y. 2006) (same). As Defendants point out, "[b]ecause many millions of users from across the globe create accounts and upload videos on YouTube's website free of charge, the forum-and-venue-selection clause is necessary to manage the costs of litigation and reduce the burden to YouTube personnel of litigating all over the world." Decl. of Kate Hushion, YouTube Operations Strategist, [Dkt. 8-3] ¶ 6. The provisions and protections in the Terms of Service "make it possible for YouTube to provide video hosting services for free to hundreds of millions of users around the world." Def. Mem. at 11. Having taken advantage of YouTube's free services, Plaintiffs cannot complain that the terms allowing them to do so are unenforceable. Thus, having discovered no issues of

---

[9] Plaintiffs' attempts to distinguish *Feldman* miss the mark. The Court concurs with the result there and agrees that Plaintiffs have not shown evidence of coercion or overreaching by YouTube.

unconscionability with YouTube's Terms of Service, the Court finds that the venue selection clause requiring litigation in Santa Clara County is enforceable.

### B. The D.C. Consumer Protection Procedures Act (CPPA) Does Not Mandate Venue in this Court

Plaintiffs also argue that this case should not be transferred because, according to them, the CCPA "mandates venue exclusively in courts of competent jurisdiction in the District for disputes arising under that statute." Am. Compl. ¶ 12. However, CPPA claims may be brought anywhere that a court has jurisdiction, including the Northern District of California. *See, e.g., Pecover v. Electronics Arts Inc.*, 633 F. Supp. 2d 976, 984 (N.D. Cal. 2009) (denying motion to dismiss plaintiffs' claims brought under CPPA); *In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d 1109, 1125-26 (N.D. Cal. 2008) (same). Moreover, CPPA claims brought in the District of Columbia may be transferred when venue is improper. *See Sweetgreen*, 882 F. Supp. 2d at *2, 6-7 (transferring case where plaintiff alleged violations of CPPA to Virginia); *Murdoch v. Rosenberg & Assocs., LLC*, 2013 U.S. Dist. LEXIS 40825, at *2-3 (D. Md. Mar. 22, 2013) (noting that D.C. district court transferred case, including claims under CPPA, to Maryland).

To the extent Plaintiffs argue that their CPPA claims *must* be brought federal court in the District of Columbia, they are incorrect. The text of the statute alone forecloses that argument, as it states that CPPA claims shall be brought in *D.C.'s* Superior Court, not the *federal* District Court for the District of Columbia. *See* D.C. Code § 29-3905(k)(1)(A), (k)(1)(A)(2) (providing that "[a] consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District" and that such a claim "shall be brought in the Superior Court of the District of Columbia.").[10] Thus, a party asserting a claim under the CPPA is not restricted

---

[10] The relevant clause here is found in the section of the D.C. Code entitled "Complaint Procedures" and appears to explain when a consumer seeking legal relief may file a claim in

to federal court. Further, this language, while creating jurisdiction for D.C. Superior Court, does not deprive federal courts of jurisdiction over CPPA claims. *See, e.g., Sweetgreen*, 882 F. Supp. 2d at *2, 6-7; *see also District of Columbia ex rel. American Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1045-46 (D.C. Cir. 1986) (holding that another D.C. Code provision stating that suits under it "shall be brought" in D.C. Superior Court did not defeat federal diversity jurisdiction). Accordingly, Plaintiffs' claim that venue in this District is mandatory under the CPPA is meritless.[11]

### IV.  CONCLUSION

For the reasons set forth above, the case will be transferred to the U.S. District Court of the Northern District of California, where Santa Clara County is located. Plaintiffs' motion for a preliminary injunction [Dkt. 3] and Defendants' motion to dismiss [Dkt. 18] will be denied without prejudice. A memorializing Order accompanies this Memorandum Opinion.


Date:  October 29, 2014

                                                         /s/
                                      ROSEMARY M. COLLYER
                                      United States District Judge

---

court, as opposed to the situation where a party seeks to file a complaint about an illegal trade practice. *See* D.C. Code § 29-3905.

[11] Defendants argue that Plaintiffs' allegations under the CPPA are improper given that the Terms of Service provide that they shall be governed by California law. This Court does not reach this question given its decision to transfer.